**PRO SE OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**100 FEDERAL PLAZA**
**CENTRAL ISLIP, NY 11722**
**(631) 712-6060**

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 03 2014 ★

LONG ISLAND OFFICE

Date:   March 3, 2014

Re:   13-CV-3537 (SJF)(GRB)

Dear *pro se* litigant:

The enclosed <u>Opposition</u> is being returned without docketing or consideration for the following reason(s):

(   )   The docket number and judge's initials are missing.

(   )   Your signature is required on all papers filed with the Court.  Please sign wherever an "X" appears.

(   )   These papers appear to be intended for another court or agency.

(   )   Papers cannot be filed without indicating that they have been served on all parties in your action, or their attorneys. This office *will not* forward copies of your papers to other parties or their counsel.  An <u>Affirmation of Service</u> form is enclosed.

(   )   Your papers do not meet the minimum requirements for:

      (   )   Legibility: please type or print clearly.
      (   )   Language: only <u>English</u> is acceptable.
      (   )   Form or Content:  See forms/instructions enclosed.
      (   )   Please indicate the documents you served on your affirmation of service.
      (   )   Other:

(   )   This Court will only accept papers on 81/2 by 11 paper. Note that this does not include exhibits.

(   )   Pursuant to Local Civil Rules 5.1, discovery materials are not filed with the Court except by Order of the Court.

(   )   Your <u>Notice of Appeal</u> has been processed, and your case is closed. Your papers should be directed to:

      United States Court of Appeals for the Second Circuit
      Thurgood Marshall U. S. Courthouse
      40 Foley Square
      New York, NY 10007

(   )   Our records indicate that you are represented by an attorney. As such, you may not file papers or communicate directly with the Court. Please refer this matter to your attorney.

(   )   The Court cannot act on your submission(s). To the extent that it is your intent to start a new action, or to file a motion, please see the enclosed form(s).

**( X )   <u>Other</u>:   <u>Pursuant to Rule 4 (C) of Judge Feuerstein's Individual Rules (enclosed).</u>**

*PRO SE* OFFICE
By: /s/ C.Vukovich

UNITED STATES DISTRICT COURT
EASTERN DITRICT OF NEW YORK



DENISE HOULIHAN,
                              Plaintiff,

-against-

METROPOLITAN LIFE INSURANCE COMPANY,
                              Defendant,

Civil Action Number:
13-CV-03537-SJF-GRB

PLAINTIFF'S RESPONSE
TO DEFENDANT'S RULE 56.1
STATEMENT

Plaintiff, Denise Houlihan, submits this response and objection to Defendant's Rule 56.1 Statement.

1.   Plaintiff submits that the Court should disregard Defendant's 56.1 Statement in its entirety because it contains argumentation, long narratives and conclusory assertions without proper foundation. *Tsai v. The Rockefeller University,* 2002 WL 237 843 (S.D.N.Y.) at 1.

RECEIVED

FEB ? : 2014

EDNY PRO SE OFFICE

2.   Plaintiff further submits that the following paragraphs of Defendant's Statement fail to contradict facts set forth in the Plaintiff's original claim:

    1.   (¶¶1-5) (admitted);
    2.   (¶6) (dispute statement of facts, Defendant re-characterizes the Plaintiff's claim in a conclusory manner) Plaintiff claimed that she was unable to work due to complaints of chronic sore throats, ear pain, muscle aches and pain, sore lymph nodes both axillary and cervical, abnormal MRI's, insomnia, night sweats, general tiredness, and an inability to concentrate. Several Doctors concluded that Plaintiff suffers from Chronic Fatigue and Fibromyalgia); (See Defendant's Declaration of Matthew Halford)[DMH]
    3.   (¶¶7-9);
    4.   (¶10) (Defendant misstates the authority of Verizon Wireless to delegate to MetLife, the authority to [improperly] determine the Plaintiff's eligibility under the terms set forth within the disability plan);
    5.   (¶¶11-14) (admitted);
    6.   (¶15)(dispute statement of facts, Defendant re-characterizes the Plaintiff's medical complaints as conclusory whereas the Plaintiff did actually complain of

1

chronic sore throats, ear pain, fatigue, muscle aches, sore [axillary and cervical] lymph nodes, sleeplessness, chronic pain and night sweats); (See DMH)

7.    (¶16) (facts admitted as it pertains to the footnote however the defendant merely re-characterizes the initial approval as an acknowledgement when in fact it was an initial approval of short term disability benefits); (See Exhibit A)

8.    (¶¶17-22) (admitted to the extent that the facts establish objective medical determination provided by the plaintiff to the defendant in a timely manner thus establishing threshold requirements for short term disability coverage as indicated in the Plan provided by the Defendant which was improperly denied to the Plaintiff). (See DMH)

9.    (¶23) (dispute statement of facts, Plaintiff provided and the Defendant possessed an abundance of medical records subsequent to May 25, 2012 and the defendant even acknowledges so throughout the Rule 56.1 statement); (See DMH)

10.    (¶24) (admitted);

11.    (¶25) (dispute statement of facts, Defendant re-characterizes the Dr. Rothschild examination as contrapositive to the medical findings that the Plaintiff suffers from Chronic Fatigue Syndrome and Fibromyalgia which are illnesses covered under the Short Term Disability Plan provided by the Defendant); (See DMH)

12.    (¶26) (admitted);

13.    (¶27) (dispute statement of facts, the Plaintiff complained of worsening symptoms from the Chronic Fatigue Syndrome and Fibromyalgia which take time to identify and diagnose); (See DMH)

14.    (¶28) (dispute statement of facts, Defendant self-servingly re-characterized the Plaintiff's job description to not include driving as an essential function of the Plaintiff's job position in order to not consider strict orders by the Plaintiff's Doctor not to drive or concentrate which are both essential job functions as evidenced by ¶59 of Defendant's Rule 56.1 Statement); (See Exhibit B, P.2)

15.    (¶29) (admitted);

16.    (¶30) (Defendant admits to not considering [improper] objective medical evidence provided in a timely manner to the Defendant because it pre-dates the period of disability);

17.    (¶¶31-63) (admitted and on those records alone, short term disability should have been approved by the Defendant and the report by Dr. Del Valle is a conclusory based erroneous decision ignorant of the facts as plainly as they were presented); (See DMH)

18.    (¶¶64-71) (admitted to the occurrence of said communications only).

3. All Paragraphs contained within the Defendant's 56.1 Statement contain extensive argumentation, self-serving manipulation of facts and conclusory assertions, which do not constitute a "short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried," within the meaning of Rule 56.1(b), and which therefore should be disregarded.

2

WHEREFORE, Plaintiff objects to Defendant's 56.1 Statement and asks that the Court deem the facts in Plaintiff's 56.1 Statement to be admitted.


Dated; Setauket, New York
      February 18, 2014

Yours, etc.,
Denise Houlihan
Pro Se Plaintiff


By: _Denise Houlihan_

Denise Houlihan


111 Old Field Road
Setauket, NY 11733
(631)219-7035

3

*Exhibit A*

*ERRONEOUS APPROVAL Letter*

Metropolitan Life Insurance Company
MetLife Disability, P O Box 14590, Lexington, KY 40511
Phone: 1-800-826-1023     Fax: 1-800-230-9531

**MetLife**

June 18, 2012

01211
Ms. Denise M. Houlihan
111 Old Field Rd.
Setauket, NY 11733

RE: Employer: VERIZON WIRELESS
Claim #: 541205302354
ID Number: 453343

Dear Ms. Houlihan:

We have reviewed your claim for New York statutory disability benefits and have approved your claim from May 25, 2012 through July 16, 2012.You will receive your disability benefit payment through your employer's regular payroll process.

Please notify MetLife Disability if you return to work prior to your expected date of July 17, 2012.

This claim was processed in accordance with the terms of your Employee Benefit Plan.

Your Health Care provider has indicated that you will be able to return to work and perform the duties of your job on July 17, 2012. **Therefore, benefits beyond July 16, 2012 are not payable.**

You may appeal this decision by sending a written request for appeal to MetLife Disability, PO Box 14592, Lexington KY, 40511-4592 within 180 days after you receive this denial letter.  Please include in your appeal letter the reason(s) you believe the claim was improperly denied, and submit the previously requested information as well as any additional comments, documents, records or other information relating to your claim that you deem appropriate for us to give your appeal proper consideration.  Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your claim.

MetLife will evaluate all the information and advise you of our determination of your appeal within 45 days after we receive your written request for appeal.  If there are special circumstances requiring additional time to complete our review, we may take up to an additional 45 days, but only after notifying you of the special circumstances in writing.  In the event your appeal is denied in whole or in part, you will have the right to bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

Sincerely,

*Stacey Perron*
**MetLife Disability**

**Metropolitan Life Insurance Company**

**MetLife Disability**
PO Box 14592
Lexington, KY 40511-4592
Phone: 800-826-1923 Fax: 800-230-9531

## NOT FOR SERVICE OF LEGAL PROCESS

March 7, 2013

Steven J. Cacciola Attorney at Law
26 Savanna Circle
Mount Sinai, NY 11766

RE:  Short-Term Disability for Denise Houlihan
Group: Verizon Wireless
Claim No.: 511205298271
Group No.: 302017

Dear Attorney Cacciola:

We have completed our review of the denial of your client's claim for Short Term
Disability (STD) benefits.  For the following reasons, the original determination to deny
benefits was upheld upon appeal review.

The Verizon Wireless Plan states the following:

You are considered totally disabled under the *Plan* for purposes of STD benefits if, as a
result of illness, injury or pregnancy, MetLife determines that you meet all of these
conditions:

"You are absent from work for at least 8 full consecutive calendar days beginning with
and including your first day absent from work because you are unable to perform for any
Employer the *Essential Functions* of *Your Occupation* for which you are qualified by
training, education or experience; and

You have provided to MetLife objective medical evidence that sufficiently evidences, as
determined by MetLife, that you cannot perform the *Essential Functions* of *Your
Occupation* for which you are qualified by training, education or experience for any
Employer. Your ability to get to and from the work place is not considered when
determining whether you cannot perform the *Essential Functions* of *Your Occupation* if
driving is not an *Essential Function* of *Your Occupation*. Also, if *Your Occupation*
requires a license, the fact that you have lost your license for any reason will not be
considered in determining whether you cannot perform the *Functions* of *Your
Occupation; and* **Note: You will** automatically be considered unable to perform the
*Essential Functions of Your Occupation* for pre-determined durations following certain
medical procedures as determined and administered by MetLife from time to time.

You are receiving *Appropriate Care and Treatment* and complying with the requirements
of such treatment; and You are unable to earn more than 80% of your pre-disability
earnings at *Your Occupation*; and

You are not engaged in any job/occupation, including self-employment, during the STD
application process or while you are receiving STD benefits."

Ex B)

We have reviewed your client's entire claim.  This included, but was not limited to the following information:

According to your client's employer, your client's last day worked as an indirect sales director for Verizon Wireless was May 24, 2012.  Your client's date of disability was May 25, 2012 due to chronic sore throats, muscle pain, sore lymph nodes, chronic fatigue syndrome, insomnia, low B12 levels, fibromyalgia, left arm pain, bilateral trapezius spasm, low grade fevers, low white blood count, migraines, depression, and positive for Epstein Barr and parvovirus. Your client's claim was denied.  This review was conducted to determine your client's eligibility for initial benefits as stated in the Verizon Wireless Plan.

The light job duties of an indirect sales director include functional requirements of: occasional sitting, frequent walking and standing (6-8 hours per day), seldom bending, seldom squatting, seldom kneeling, seldom grasping, pushing, and pulling, frequent flexing or extending wrists, frequent lifting/carrying, seldom writing, frequent typing, ability to lift twenty to fifty pounds or less, and frequently lifting ten pounds. The core mental factors include: express thoughts and information verbally, express thoughts and information in writing, interact and respond to others while handling conflict or difficult people, make independent decisions/judgment, concentrate for a period of time, engage in rational thought and decision making, interact and respond to others in a normal social/work environment, make plan of action, plan actions in response to information and follow it, and engage in mathematical calculations.

In addition, your client's occupational duties consist of: a successful sales track record, proven leadership ability, knowledge of wireless industry required, the ability to manage multiple projects simultaneously, working in a fast-paced, dynamic, customer and team-oriented work environment, complex problem-solving, excellent decision-making and leadership skills, the ability to motivate and lead a team to achieve sales objectives, present to various audiences, and field travel required. There is rare sitting involved, and her occupation requires interacting with upper management, strategizing, market reviews, and aggressive sales goals for her and her sales team to achieve.

Please be advised that we verified with your client's employer, the field travel portion required for your client's occupation. Her occupation requires extensive travel, and she receives a car allowance as part of her occupation requirements. Your client is responsible for overseeing 648 locations in Long Island New York, down to south New Jersey. She travels sixty percent of the time, and is on her feet once she does arrive.

*Not included as an essential Job function*

interacting with management staff.                                                    ⎯⎯⎯ⁱ⁻ⁿ a̅bove ᵗᵗ

On December 10, 2012 we received your appeal request for your client. In your request, you listed parts of your client's occupational duties, and indicated that traveling was in fact part of her job duties. Your letter also outlined provider names, and treatment dates, and stated that this information was submitted. You then went on to explain how your client's condition made it difficult to work when she experienced symptoms. You stated that your client has been a loyal, vital, and dedicated employee for years at her place of employment, and deserves the protection provided by her employer, for such an instance of disability for which MetLife's services have been secured to provide good faith. Information submitted with your client's appeal consisted of her job description, medical records and treatment information from Internal Medicine Physician, Dr. Bleecher, which consisted of progress notes for May 2012 and June 2012, a September 19, 2011 MRI of the brain report, an October 11, 2011 bilateral axilla sonogram report, an October 11, 2011 MRI of the brain with and without contrast report, a December 2, 2011 soft tissue neck with contrast CT report, a December 2, 2011 chest, abdomen, and pelvis CT report, an April 26, 2012 soft tissue neck with contrast CT report, the total disability/STD benefits definition portion of the Plan, and a job description that you felt was incomplete, that did not include driving and travelling.

                                   *ExB 2*

On December 19, 2012, we left you a voice message at: (631)-219-7483, regarding your client's claim. We asked for a callback to discuss the file, and to obtain your fax number, for interview questions to be sent.

On December 20, 2012, you left a voice message indicating that your fax number was: (845)-365-7034. As a result, we faxed you a set of interview questions we would normally ask the employee, but since this employee had legal representation, the interview questions were sent to you, in order to address them with your client, and send back for our review. You left a voice message later that day, asking for the status of the fax that was being sent. We left you a voice message indicating that it had been faxed earlier that day, and that we received a confirmation. We asked for you to contact us if it had not been received on your end.

Please be advised that this fax did not reach your office, as a male individual contacted us that day to state he had received the fax, and that he would destroy it, as he was unsure why it was sent to him. The fax was sent to the number you provided.

You left an additional voice message on December 20, 2012, stating that the fax number was correct, and that you were unsure why you did not get it. You then asked for the questions to be sent via email. Please be advised that we had your email address on the appeal request letter you submitted.

We placed a call to you on December 21, 2012 in follow up and left a voice message indicating that the information was sent to the fax number provided, but that a man by the name of Lewis called the case manager to advise he received it and would destroy it. We advised you that we would send the request via email as a courtesy, but asked that you please respond via the fax number provided, as we do not correspond via email. We then sent the interview questions via email to you on December 21, 2012 to: cacciolalaw@gmail.com.

On December 26, 2012, you left a voice message indicating that you needed additional time to respond to our request. You asked to be contacted at: (631)-219-7483. We left you a voice message on December 27, 2012 and advised you that we would allow an extension through January 14, 2013, and to callback if additional time was needed after that date.

On January 11, 2013, you left a voice message and indicated that the information had been faxed in, and that you wanted to make appeals aware it had been sent. We received detailed responses to the interview questions, and also treatment records from Acute Chronic Occupational Illness Physician, Dr. Rothschild. Also received, was an FMLA form from PA-C Sherri Sheils, who is in the same office as Primary Care Physician, Dr. Bleecher. Also received was medical documentation for July 2012 and August 2012 from NP Janet Bienkowski, who is in the same office as Preventative Medicine and Wellness and Chronic Illness Physician, Dr. Jaber.

In effort to provide your client with a full and fair review, an independent physician consultant Board Certified in Internal Medicine reviewed your client's entire file.

The consultant called the office of Dr. Bleecher and PA-C Sherri Shiels on January 29, 2013, and spoke to Kristin. She took a detailed message for a return call and agreed to put the message with your client's file on Sherri Shiels desk. Jessica called the consultant back and asked what the intention was for Dr. Bleecher. The consultant explained that she was reviewing the medical claim for disability and requested further clarification, as it was unclear what had changed during the time your client was out of work and noting that the information sent regarding the data predated this period of claim.

$Ex \ \#3$

The consultant stated that she was questioning as to what your client's clinical findings were to support functional impairment, as it was attributed to be due to acute viral insult. The consultant noted that the information provided indicated a referral to Dr. Rothschild and sleep aides. Jessica understood, and would agree to speak to Sherri Shiels. Jessica returned the call later that day stating that Ms. Shiels opined that there was nothing more she could provide that was not already in the medical file. She preferred to answer any further questions in writing.

The consultant called the office of Dr. Rothschild on January 28, 2013 and was informed that Dr. Rothschild was on vacation. The receptionist was able to provide the dates of treatment. The initial visit was July 6, 2012. There were no other visits during this claim period. She was seen last on August 15, 2012. She cancelled appointments for August 22, 2012, November 15, 2012, and January 18, 2013. Her next appointment was for February 4, 2013. The consultant opted not to leave a message as the claim period ended on July 17, 2012, when she returned to work.

The consultant called the office of Dr. Jaber and NP Janet Bienkowski on January 28, 2013 and spoke to Bridgette. She took a detailed message for Janet to return the call. The consultant called again on January 29, 2013 and spoke to Bridgette, who explained that she did give the message to Janet, who gave the file and message to Dr. Jaber for a return call. To date, there was no return call from Dr. Jaber or NP Janet Bienkowski.

Based on the review of the records the consultant noted that the medical information did not support functional limitations beyond May 24, 2012, based on medical or physical diagnoses. Most of the information submitted pre dated this time period. According to the consultant, the information additionally from September 2011, December 2011 and April 2012 did not support an active medical issue that would have been expected to cause functional impairment for the period of May 24, 2012 through your client's return to work date of July 17, 2012. There was no active treatment for any specific medical or physical diagnosis that would have allowed your client to return to work, other than providing sleep aides and changing the medication of Cymbalta to Wellbutrin. The reference to acute viral insult was not well clarified, as the clinical data and findings pre dated this particular time period. Additionally, the consultant stated that the lab values did not reveal any endocrine, metabolic, or active infectious etiology that would have had bearing on the claim period under review.

In conclusion, the consultant noted that there was lack of clinical findings and lab data/ancillary data to support reasonable restrictions or limitations during the period in review. There may have been other barriers that precluded working during this time period that have not been addressed per the consultant. Dr. Rothschild noted depression. The labs and radiographic studies performed in 2011 and April 2012 did not reveal any pathology or significant values that would lend to restrictions or limitations. These labs were never repeated during the claim period. The consultant stated that it was unclear what changed to cause your client to cease work beginning May 25, 2012, and then return to work on July 17, 2012, when there was essentially no additional work up. Insomnia appeared to be the primary condition without evidence to reveal a medical etiology. According to the consultant, care and treatment prior to this claim period was appropriate. It was unclear what primary conditions were under treatment during this claim period, other than a change in sleep aides. The consultation with Dr. Rothschild came late in the claim period thus this was untimely. It was unclear whether your client was also advised psychological counseling. There was no documentation of any untoward side effects related to medications your client may have been taking per the consultant.

*Ex B 4*

Please be advised that as the consultant was not able to speak to Dr. Jaber, NP Janet Bienkowski, or Dr. Bleecher, specific questions from the consultant were sent to each provider via fax on February 19, 2013. The providers had until February 27, 2013 to respond.

A response from PA-C Sherri Shiels was received on February 26, 2013; a letter that stated your client was seen multiple times between April 20, 2012 and July 17, 2012, and it was clear that your client was not well visibly. The letter stated that your client had numerous symptoms and complaints. The biggest concern was extreme fatigue and constant pain. The letter also stated that all of your client's significant complaints were subjective, and tests ordered came back negative. Your client was sent to several specialists who diagnosed her with fibromyalgia and chronic fatigue syndrome.

The information submitted did not provide any new documentation substantiating your client's inability to work. The information submitted was already known and was reviewed by the consultant.

Your client's employer's Plan requires that you are unable to perform the essential functions of your occupation in order to receive STD benefits. Unfortunately, we were not able to conclude that your client was unable to perform the essential functions of her occupation as an indirect sales director beyond May 24, 2012.  The original claim determination to deny benefits was appropriate. This is not to say your client was not experiencing difficulties, but we must administer your client's employer's Plan as it is written.

Upon request, MetLife will provide you with a copy of the documents, records, or other information we have that are relevant to your client's claim and identify any medical or vocational expert(s) whose advice was obtained in connection with your client's claim. You also have the right to bring civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974.

You client has exhausted her administrative remedies under the Plan, and no further appeals will be considered.

Sincerely,
*Lisa Raehm*
Appeal Specialist

Appeal Specialist
**MetLife Disability**
1-800-826-1923

$Ex\ B$   5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DENISE HOULIHAN,

                    Plaintiff,

                -against-

METROPOLITAN LIFE INSURANCE COMPANY,
                 Defendant,

Civil Action Number:
13-CV-03537-SJF-GRB

PLAINTIFF'S AFFIDAVIT

State of New York,  )
County of Suffolk.  )     ss:

Denise Houlihan, being duly sworn, deposes and says:

     1.  I am the Plaintiff in this action, and I respectfully submit this affidavit.

     2. I have personal knowledge of facts related to this complaint and the accompanying Response to the Defendant's Rule 56.1 Statement, which bear on this motion.

     3. In August of 2011, I began to feel ill. Symptoms such as migraine headaches, swollen lymph nodes, extreme fatigue and pain persisted for months. I was sent to a series of specialists who were perplexed by my illness.

     4. By May of 2012, my primary doctor was still unclear of what was causing my symptoms. She acknowledged the swollen lymph nodes, extreme fatigue and pain and suggested I try Cymbalta as it is used to treat fibromyalgia. My fatigue was so severe that I had fallen asleep at my desk during a conference call and often felt a need to nap while driving between Long Island and NJ. I had already been on Wellbutrin for roughly two years due to fatigue and slight depression.

     5. My career is extremely demanding, requires traveling more than half of the time, and carries a tremendous amount of responsibility.

1

6. Cymbalta is used to treat fibromyalgia. So Dr. Shields felt Cymbalta would help. She recommended I take time off to rest and get past these symptoms as my fatigue was becoming overwhelming.

7. I began the Cymbalta in mid-May and stopped taking the Wellbutrin. Within 10 days of taking the Cymbalta I began to have trouble sleeping. I would fall asleep for an hour and then wake up for the balance of the night. At this point, I had to stop working. The insomnia was horrible. My doctor was highly concerned and stated she did not want me driving. My mental abilities had also deteriorated and I was often unable to express myself clearly. At that point, rest was critical.

8. She ordered a myriad of sleeping pills as none of them worked. I went from constantly falling asleep to complete insomnia. I had no energy, exhausted physically and mentally, but could not sleep more than an hour or two a night. Dr. Shields felt I had chronic fatigue syndrome as well fibromyalgia. We decided I should find a specialist as she was unclear of how to proceed.

9. I called Stony Brook University to see if they could recommend a chronic fatigue/fibromyalgia specialist. They gave me Dr. Jaber's phone number. I called immediately to get an appointment. It was roughly the first week of June. Dr. Jaber was unable to get me in before July 6th. In fact, she was not taking new patients, I had to wait to see her colleague, Dr. Ross. I checked in once a week to see if they could offer me an appointment sooner, but the response was no. I had no other option than to wait.

10. Throughout June, my symptoms did not improve. I finally was able to see Dr. Ross and she did a thorough workup on my first visit. She concluded I had Chronic Fatigue Syndrome and Fibromyalgia.

11. I slowly stopped the Cymbalta and found Ambien to begin to help me to sleep. One of Dr. Ross's colleague, Janet Bienkowski, met with me on July 11th. She suggested I go back on Wellbutrin as it is a central nervous stimulant.

12. Within a week, I began sleeping better and feeling stronger. At that time, on July 16th I returned to work.

13. Throughout the course of my illness, Met life, was extremely negligent in their handling of my claim. I filed my claim within the required time frame. I specifically stated Chronic Fatigue syndrome.

14. MetLife initially categorized the claim as depression. I called them to straighten this out. They then gave me until mid June for my doctor to respond. My doctor responded and MetLife felt my illness did not prohibit me from working. In fact, in their first denial, they used a job description to base their decision of denial. The job

2

required to engage with senior leadership and be able to speak to my results daily. Finally, I have a team of 29 employees that I am responsible for.

16. Upon my appeal, I presented MetLife with a current job description. They confirmed the fact that I needed to travel a minimum of 60% of the time through my boss, Patrick Devlin.

17. Unfortunately, MetLife still decided to deny my appeal. While they acknowledged I had Chronic Fatigue Syndrome, they didn't feel it precluded me from fulfilling my job duties. They felt I waited too long to seek the help from a specialist. Quite frankly, waiting a month to see a specialist is in fact very normal. I did my best to get the medical attention to help me recover as soon as possible. The fact that MetLife did not respect my doctor's advice to not drive is disheartening. I truly did not belong driving and did not feel safe with my driving abilities. I was extremely sleep deprived. My mental abilities had deteriorated to a point that I was always confused. I could not perform my job functions.

_Denise Houlihan_
DENISE HOULIHAN

Sworn to before me this
_19_ day of February, 2014

_Mark W Griff_
Notary Public

**MARK W. GRIFFIN**
Notary Public - State of New York
No. 01GR6290342
Qualified in Nassau County
My Commission Expires October 07, 2017

3